IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUTHER W. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 05 C 5775 |
| ) | |
| MARYAM AHMAD, Asst. Cook County Public ) | Judge Ronald A. Guzmán |
| Defender, JASON CARLSTEDT, Asst. Cook ) | |
| County States Attorney, SCOTT KURTOVICH, ) | |
| Cook County Jail Acting Director of ) | |
| Department of Corrections, BRENDA ) | |
| HOLLIDAY, Social Worker for Circuit Court ) | |
| Of Cook County, Social Service Department, ) | |
| First District, and ELLIOTT MEDINA, Mgr. of ) | |
| Central States Institute of Addiction, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Luther W. Miller has sued Maryam Ahmad, Assistant Public Defender for the Circuit Court of Cook County; Jason Carlstedt, Assistant States Attorney for the Circuit Court of Cook County; Scott Kurtovich, Acting Director of Department of Corrections; Brenda Holliday, Social Worker for Circuit Court of Cook County Social Service Department, First District; and Elliott Medina, Manager of the Central States Institute of Addiction, individually and in their official capacities under 42 U.S.C. §§ 1983, 1985. and 1986 for alleged deprivation of his constitutional rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments. Before the Court are defendants' motions to dismiss pursuant to the Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). In response to the motions to dismiss, Miller has agreed to sever his claims against Brenda Holliday and Elliott Medina to pursue such claims in another forum, and thus the Court dismisses the claims against Brenda Holliday and Elliott Medina without

prejudice. For the reasons set forth below, the Court grants in part and denies in part the remaining defendants' motions.

## FACTS

Luther Miller was convicted of driving under the influence and sentenced to supervision, which required him to comply with required drug testing. (Am. Compl. ¶ 3.) Although Miller appeared at a testing facility for a drug test, he was not permitted to submit to testing because he did not pay the fee. (*Id.*) Miller provided written proof to his caseworker, Brenda Holliday, that he had appeared for the drug test but had not taken it. (*Id.* ¶ 8.) Miller subsequently submitted to the drug test and tested positive for narcotics, which violated his supervision. (*Id.* ¶ 3.)

On September 20, 2005, Miller was arrested in his home for failure to appear in court regarding the violation. (*Id.* ¶ 2.) The next day, Miller appeared in court, and the court recalled the warrant and scheduled another hearing. (*Id.*) On September 22, 2005, Miller was in the "bullpen" (holding cell) when the Public Defender, Maryam Ahmad, appeared and addressed the detainees. (*Id.*) Ahmad informed all of the detainees in the bullpen that there were three possible options to resolve their cases: (1) the States Attorney offered detainees jail time ranging from 30-364 days, with a credit for days served; (2) detainees could demand a trial and the States Attorney would request the maximum sentence (120 days) before starting a trial, with the detainees remaining in custody if they were unable to post bail; and (3) detainees could post a cash bond of ten percent of their bond amount. (*Id.* ¶¶ 2, 3.) Ahmad did not answer any questions and did not say that she would listen or put forth any defense. (*Id.*)

During his processing, Miller was held in a cell that measured approximately twenty by

twelve feet together with as many as eighty-five other detainees for roughly three hours. (*Id.* ¶ 5.) The inmates were required to stand in close proximity, and there was no water provided. (*Id.*) Miller complains that the heat and stench were unbearable, and that there was no ventilation in the cell. (*Id.*) During this time, Miller began to experience chest pains, shortness of breath, and blurred vision. (*Id.*) Plaintiff previously had two strokes and continues to suffer from high blood pressure. (*Id.*) When Miller saw a doctor over four hours later his blood pressure was 170/110 and he was prescribed medication and aspirin. (*Id.*)

The Court held over Miller's case until September 23, 2005. (*Id.* ¶ 4.) On that day Miller was again placed in a holding cell with other detainees, and again Ahmed appeared before the group and repeated the options she had provided the day before. (*Id.*) Ahmed once again refused to answer any questions or to represent a defense or bond reductions. (*Id.*) Miller waited in this holding cell for approximately one hour while waiting to appear before the judge. (*Id.* ¶ 6.)

## Discussion

Defendants move to dismiss the complaint pursuant to Rule 12(b)(1) for lack of jurisdiction because the action is barred by the Eleventh Amendment. In the alternative, defendants argue that the complaint fails to state a claim pursuant to Rule 12(b)(6). The Court addresses each argument in turn.

## I. Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss requires a court to dismiss any action over which it lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, where the motion challenges the sufficiency of the allegations of subject matter jurisdiction, the district court must accept as true all well-pled allegations of the complaint, drawing all reasonable inferences in the plaintiff's favor. *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

In his amended complaint, Miller requests compensatory and punitive damages as well as injunctive relief as to all defendants. Although Miller does not specify whether he is suing defendants in their official or individual capacities, in the spirit of construing *pro se* complaints liberally, the Court reads Miller's complaint to include both individual and official capacities. *See Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991).

"A suit for damages against a state official in his or her official capacity is a suit against the state for Eleventh Amendment purposes." *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). However, the Eleventh Amendment does not bar suits against state officials in their individual capacities. *Williams v. Anderson*, 959 F.2d 1411, 1413 (7th Cir. 1992).

Whether a defendant is a state official for purposes of the Eleventh Amendment is a matter of state law. *Garcia v. City of Chi.*, 24 F.3d 966, 969 (7th Cir. 1994). The Illinois Supreme Court has determined that the Cook County State's Attorney is a state official. *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1272 (Ill. 1990). Further, because "[u]nder Illinois law Assistant State's Attorneys are surrogates for the State's Attorney," they should likewise be

classified as state officials. *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995); *see Manos v. Caira*, 162 F. Supp. 2d 979, 987 (N.D. Ill 2001). Therefore, Miller's suit against Assistant State's Attorney Carlstedt for damages in his official capacity is jurisdictionally barred by the Eleventh Amendment.

Miller also sues the Acting Director of Department of Corrections Scott Kurtovich in his official capacity. Official-capacity suits are deemed to be against the entity of which an officer is an agent. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). The Illinois Department of Corrections is an agency of the state of Illinois, and, thus it is afforded the same immunity as the state itself. *Foley v. Am. Fed'n of State, County, & Mun. Employees, Council 31, Local No. 2258*, 556 N.E.2d 581, 586 (Ill. App. Ct. 1990). As such, Miller's suit against Kurtovich for damages in his official capacity is barred by the Eleventh Amendment.

However, counties and municipalities are not shielded by the Eleventh Amendment. *Ruehman v. Sheahan*, 34 F.3d 525, 528 (7th Cir. 1994). The Illinois Supreme Court has determined that the Public Defender and Assistant Public Defenders are regarded as county officials and, as such, they are not entitled to sovereign immunity. *Johnson v. Halloran*, 742 N.E.2d 741, 744 (Ill. 2000). Accordingly, Miller's action against Assistant Public Defender Maryam Ahmed for damages in her official capacity is not barred by the Eleventh Amendment.

Lastly, the Court deems waived defendants' argument that abstention is appropriate under *Younger v. Harris*, 401 U.S. 37, 43-45 (1971). Other than merely citing a case that iterated the *Younger* doctrine and a single case for the rule of law that purports to extend *Younger* to actions where the relief sought is damages for misconduct in an underlying criminal case, defendants provide no legal authority, case analysis, or application of the law to the facts of

this case to support their argument that this lawsuit should be stayed. *See Jones v. City of Country Club Hills*, No. 02 C 9159, 2003 WL 21659687, at *4 n.6 (N.D. Ill. July 15, 2003) (noting that parties may waive *Younger* arguments).

## II. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court accepts the "well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff." *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Dismissal is proper where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Section 1983 "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994)). To state a claim under section 1983, a plaintiff "must show (1) action taken under color of state law, . . . [and] (2) a deprivation of a right protected by the Constitution." *Brown v. City of Lake Geneva*, 919 F.2d 1299, 1301 (7th Cir. 1990).

### A. Assistant State's Attorney Jason Carlstedt

Carlstedt argues that he should be afforded absolute immunity from liability for his participation in the alleged conspiracy between himself and Assistant Public Defender Ahmad. The Court agrees.

6

"Prosecutors may be entitled to either absolute or qualified immunity from civil liability under 42 U.S.C. § 1983 for actions undertaken pursuant to their official duties." *Mendenhall v. Goldsmith,* 59 F.3d 685, 689 (7th Cir. 1995). "When determining which type of immunity a government official enjoys, we look to the nature of the function that the official was performing in the particular case." *Henderson v. Lopez,* 790 F.2d 44, 46 (7th Cir. 1986).

Thus, the Court must look to the nature of the function performed by Carlstedt. In offering a plea bargain to the Assistant Public Defender, Carlstedt was acting as an advocate for the state, and thus he was performing an advocate's duty and function.

The Court must also look to three factors in determining whether Carlstedt is absolutely immune from damages for his conduct. *See Lucien v. Preiner,* 967 F.2d 1166, 1167 (7th Cir. 1992). These factors are: "(1) whether an historical or common law basis exists for granting an official absolute immunity from suit for performing a particular function; (2) whether performing the function poses special risks of vexatious litigation; and (3) whether sufficient safeguards exist to prevent abuses of power." *Auriemma v. Montgomery,* 860 F.2d 273, 275 (7th Cir. 1988).

First, the absolute immunity afforded prosecutors at common law is based upon the same considerations which informed the immunity granted to judges and grand jurors. *Imbler v. Pachtman,* 424 U.S. 409, 422-23 (1976). "These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* These concerns are especially valid when the prosecutor is initiating or prosecuting a case. *Id.* at 424-25. If a prosecutor were forced to consider the

7

possibility of a suit for damages in deciding when and how to perform his role as the state's advocate, there is real concern that this additional risk would shade his decisions and impair his ability to exercise independent judgment. *Id.*

Second, the risk of vexatious litigation is clear. If an assistant state's attorney did not enjoy absolute immunity in the initiation and prosecution of a case, he would risk liability every time he performed his public duties. This could have a chilling effect on an assistant state's attorney's advocacy for the state.

The Court's analysis of the third factor also favors granting Carlstedt absolute immunity. "Illinois law subjects the state's attorney's opinion to many checks." *Henderson*, 790 F.2d at 46. First, "[a] party who disagrees with the action resulting from the state's attorney's opinion may seek a writ of mandamus." *Id.* at 47. Second, "a state's attorney always stands amenable to professional discipline by an association of her peers." *Id.* Third, "the county officials who appoint assistant state's attorneys may remove her from office for abusing her position. Those officials, as well as the state's attorney, must answer to the public at the ballot box for incidents which the public will not tolerate." *Id.* For the same reasons discussed in *Henderson*, the Court finds that assistant state's attorneys are subject to numerous checks for abuses of authority.

For the above reasons, the Court finds that Carlstedt is entitled to absolute immunity from civil liability for his offering a plea bargain to the Assistant Public Defender.[1] Because all of Miller's claims are based on this alleged conduct, the Court grants Carlstedt's motion to dismiss the complaint against him in its entirety.

---

[1] Miller's allegation that Carlstedt conspired with Ahmad does not strip Carlstedt of absolute immunity. *See Triestman v. Kinsella*, No. 93 C 1396, 1994 WL 378462, at *2 (N.D.N.Y. Nov. 2, 1993).

## B. Assistant Public Defender Maryam Ahmad

Defendant Ahmad asks the Court to dismiss the complaint against her because Miller failed to serve upon her the amended complaint and summons in a timely manner and she is not a "state actor" for purposes of section 1983. The Court addresses each argument in turn.

Rule 4(m) provides that a court may dismiss an action without prejudice if the service of summons and complaint is not made upon a defendant within 120 days of filing the complaint. FED. R. CIV. P. 4(m). However, if the plaintiff establishes good cause for the failure, the rule mandates that the Court extend the time for service for an appropriate period. *Id.* Courts are given discretion to determine whether good cause exists. *Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir. 1987).

In this case, Miller filed his original complaint on October 6, 2005, and eventually served his amended complaint upon Ahmad February 27, 2006, 144 days after the original filing of his complaint. Because Miller is a *pro se* plaintiff, the U.S. Marshal's Office was responsible for executing service. The U.S. Marshal's Office attempted to serve Ahmad, but it was unable to access Ahmad's building. Because the failure to serve Ahmad in a timely manner was not Miller's fault, the Court finds that Miller has established good cause, extends the time of service to the actual date of service, and denies Ahmad's motion to dismiss based on Rule 4(m).

Next, Ahmad argues that plaintiff's amended complaint against her fails to state a claim because she did not act under color of state law. To state a claim under section 1983, a plaintiff "must show (1) action taken under color of state law, ... [and] (2) a deprivation of a right protected by the Constitution." *Brown*, 919 F.2d at 1301. "[A] public defender does not act under the color of state law when performing a lawyer's traditional functions as counsel to a

9

defendant in a criminal proceeding." *Polk v. Dodson*, 454 U.S. 312, 325 (1981).

> The primary office performed by appointed counsel parallels the office of privately retained counsel. Although it is true that appointed counsel serves pursuant to statutory authorization and in furtherance of the federal interest in insuring effective representation of criminal defendants, his duty is not to the public at large, except in that general way. His principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation.

*Ferri v. Ackerman*, 444 U.S. 193, 204 (1979).

In this case, Miller complains that on September 22, 2005, Ahmad announced to the crowd of detainees in the holding cell that if they were not represented, she would be representing them and they had three options: (1) serve jail time; (2) demand a trial and, if no bond is posted, remain in jail until the trial for up to 120 days; (3) post a cash bond of ten percent of the bond amount. Miller alleges that Ahmad did not talk to him personally and failed to argue for a bond reduction or present the defense, *i.e.*, that he had appeared for the drug test but was refused when he did not pay the fee, when she represented him in court.

In his response to Ahmad's motion to dismiss, Miller advances an alternative theory that Ahmed may be liable under a "joint action" theory. Under that theory, a private actor acts under color of state law when he is a willful participant in joint action with the State or its agents. *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991). This requires the plaintiff to allege an agreement between the private and public actors. *Burrell v. City of Mattoon*, 378 F.3d 642, 650 (7th Cir. 2004).

Miller alleges that Ahmad violated section 1983 when she conspired with Assistant State's Attorney Carlstedt to deprive Miller of his constitutional rights, presumably his rights as guaranteed by the Sixth and Fourteenth Amendments. At this stage in the litigation, Miller has

sufficiently pleaded that Ahmad, as a private actor, conspired with Carlstedt, an agent of the state, to violate his constitutional rights. Accordingly, the Court denies Ahmad's motion to dismiss his section 1983 claim.

In her motion to dismiss, Ahmad failed to address Miller's allegations under sections 1985 and 1986. Accordingly, those counts remain as to her.

### D. Acting Director of Department of Corrections Scott Kurtovich

Miller has sued Scott Kurtovich, Acting Director of the Department of Corrections, alleging that the conditions of his pre-trial confinement violated his constitutional rights guaranteed by the Eighth Amendment. The Fourteenth Amendment, not the Eighth, protects a pre-trial detainee from punishment before conviction, but the analysis is practically identical to the Eighth Amendment standard of deliberate indifference. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). "A detainee establishes a § 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Payne ex rel. Hicks v. Churchich*, 161 F.3d 1030, 1041 (7th Cir. 1998).

Thus, the deliberate indifference test "contain[s] both an objective and a subjective component." *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). To meet the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.' " *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."

11

*Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Miller has alleged that he was placed in a cell measuring twenty-by-twelve feet in dimension with as few as twenty to twenty-five detainees and as many as eighty-five detainees without drinking water. (Compl. at 4-6.) Miller complains that the smell and heat were unbearable and that he was held in these conditions on two separate occasions, once for three hours, the other for one hour. (*Id.* at 5-6.) He alleges that when he saw a doctor shortly after his confinement, his blood pressure was tested and it was 170/110 and he was prescribed blood pressure medications. (*Id.* at 5.) Unfortunately for Miller, although these conditions may have been uncomfortable, being deprived of water and made to stand in a small, hot cell with twenty to eighty-five other detainees for up to three hours is not a sufficiently serious deprivation. Thus, Miller has failed to allege a deprivation that meets the objective component.

Next, "[t]he subjective component requires the detainee [to] allege that the jail officials knew of a substantial risk of serious injury to the detainee but nevertheless failed to take reasonable measures to prevent that harm from occurring." *Henderson*, 196 F.3d at 845. "The officials must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 837).

Miller fails to allege that the jail guards were even aware of his medical condition, let alone that they deliberately ignored it. In fact, he alleges that he himself was unaware of having high blood pressure until his doctor tested his blood pressure *after* the confinement of which he complains. Accordingly, Miller's condition of having high blood pressure was not so obvious

that a lay person would have perceived the need for a doctor's attention. Thus, Miller has not alleged that the jail guards were aware of an excessive risk to his health, that the jail guards were aware of facts from which they could draw such an inference, or that they, in fact, drew the inference.

In sum, Miller has failed to allege a sufficiently serious deprivation and that the jail guards were aware of his medical condition of high blood pressure. Accordingly, his section 1983 claim for injunctive relief against Scott Kurtovich for violating his due process rights is dismissed without prejudice.

## Conclusion

For the aforementioned reasons, the Court grants in part and denies in part Carlstedt, Kurtovich, Holliday, Medina, and Ahmad's motions to dismiss [doc. nos. 38-1, 41-1, 44-1]. The Court: (1) dismisses all claims against Carlstedt with prejudice; (2) dismisses all claims against Holliday and Medina without prejudice; (3) dismisses all claims for damages as to Kurtovich with prejudice; and (4) dismisses all claims for injunctive relief against Kurtovich without prejudice. The Court denies Ahmad's motion to dismiss, and only Miller's claims against Ahmad remain.

**SO ORDERED.**  ENTER:  9/14/06

_____
HON. RONALD A. GUZMAN
United States Judge

13